1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

BRIAN A. LEWIS,

9

Plaintiff,

10

v.

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

Defendant.

13

NO.  C13-370-RSL-JPD

REPORT AND
RECOMMENDATION

14          Plaintiff Brian A. Lewis appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED.

20                          I.        FACTS AND PROCEDURAL HISTORY

21          At the time of the most recent administrative hearing, plaintiff was a forty-seven year

22   old man with the equivalent of a high school education.  Administrative Record ("AR") at 89.

23   His past work experience includes employment as an injection molding process technician.

24   AR at 121, 183-86.  Plaintiff was last gainfully employed in December 2004.  AR at 142, 183.

REPORT AND RECOMMENDATION - 1

1    On January 26, 2006, plaintiff filed an application for DIB, alleging an onset date of

2    December 1, 2004.  AR at 396.  Plaintiff also protective filed an application for SSI on

3    February 6, 2006.  AR at 401.  Plaintiff asserts that he is disabled due to depression, anxiety,

4    post-traumatic stress disorder ("PTSD"), Human Immunodeficiency Virus ("HIV"), Hepatitis

5    C, and arthritis.  AR at 264, 269.

6    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 264,

7    269, 271.  Plaintiff requested a hearing, which took place on March 31, 2009.  AR at 172-212.

8    On June 4, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits

9    based on his finding that plaintiff could perform a specific job existing in significant numbers

10   in the national economy.  AR at 217-29.  On September 25, 2009, the Appeals Council granted

11   plaintiff's request for review, and remanded to the ALJ for further administrative proceedings.

12   AR at 231-35.

13   On July 11, 2009, plaintiff also reapplied for DIB and SSI.  AR at 415, 418.  On

14   December 21, 2009, plaintiff testified at a second administrative hearing before the same ALJ

15   with respect to his prior applications.  AR at 133-71.[1]  On February 26, 2010, the ALJ

16   consolidated plaintiff's 2006 and 2009 DIB and SSI applications, and again found that plaintiff

17   was not disabled and denied benefits based on his finding that plaintiff could perform a

18   specific job existing in significant numbers in the national economy.  AR at 239-51.  On

19   September 22, 2010, the Appeals Council granted plaintiff's request for review of the ALJ's

20   second decision, and remanded to another ALJ for further administrative proceedings.  AR at

21   259-63.

22

23

24

---

[1] Plaintiff's insured status expired on December 31, 2009.  AR at 18.  To be entitled to DIB, a claimant must have become disabled on or before the date his or her insured status expires.  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

REPORT AND RECOMMENDATION - 2

1    On June 6, 2011, plaintiff testified at a third administrative hearing before a new ALJ.

2    AR at 59.  In addition, Steven Gerber, M.D. testified as a physician medical expert, Jay Toews,

3    Ed.D. testified as a psychological medical expert, and Mr. Duchesne testified as a vocational

4    expert.  AR at 60, 69.  On August 23, 2011, the ALJ issued a written decision finding that

5    plaintiff was not disabled at step five because there were jobs existing in significant numbers in

6    the local and national economy that plaintiff could perform.  AR at 13-38.  The Appeals

7    Council denied plaintiff's request for review, AR at 1-3, making the ALJ's ruling the "final

8    decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 5,

9    2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt.

10   3.

11                         II.      JURISDICTION

12   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

13   405(g) and 1383(c)(3).

14                         III.      STANDARD OF REVIEW

15   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

16   social security benefits when the ALJ's findings are based on legal error or not supported by

17   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

18   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

19   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

20   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

21   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

22   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

23   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

24   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

REPORT AND RECOMMENDATION - 3

1   Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

2   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

3   must be upheld.  *Id.*

4          The Court may direct an award of benefits where "the record has been fully developed

5   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

6   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

7   (9th Cir. 1996)).  The Court may find that this occurs when:

8          (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
           claimant's evidence; (2) there are no outstanding issues that must be resolved
9          before a determination of disability can be made; and (3) it is clear from the
           record that the ALJ would be required to find the claimant disabled if he
10         considered the claimant's evidence.

11  *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

12  erroneously rejected evidence may be credited when all three elements are met).

13                     IV.     EVALUATING DISABILITY

14         As the claimant, Mr. Lewis bears the burden of proving that he is disabled within the

15  meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

16  Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

17  any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

18  expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

19  423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

20  of such severity that he is unable to do his previous work, and cannot, considering his age,

21  education, and work experience, engage in any other substantial gainful activity existing in the

22  national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

23  99 (9th Cir. 1999).

24

REPORT AND RECOMMENDATION - 4

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner. *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On August 23, 2011, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social
      Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since
      December 1, 2004, the alleged onset date.

3.    The claimant has the following severe impairments: hepatitis C;
      human immunodeficiency virus (HIV); degenerative joint disease of
      the left ankle; sleep apnea; right hearing loss; depressive disorder, not
      otherwise specified; major depressive disorder versus adjustment
      disorder; substance abuse disorder.

4.    The claimant does not have an impairment or combination of
      impairments of a severity to meet or medically equal one of the listed
      impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant
      has the residual functional capacity to perform light work as defined in
      20 CFR 404.1567(b) and 416.967(b) with some additional limitations.
      The claimant can stand, walk or sit for one hour at a time with normal
      breaks, for a total of six hours each in an eight-hour day.  He can lift
      10 pounds frequently and 20 pounds occasionally.  The claimant can
      occasionally perform all postural functions.  Even though seizures are
      not an established medically determinable impairment, it is mentioned
      once in the record.  Therefore, out of an abundance of caution, the
      claimant cannot work at heights.  The claimant can perform simple,
      repetitive tasks.  The claimant can perform moderately detailed and
      complex tasks.  He can have superficial contact with the general
      public.

6.    The claimant is unable to perform any past relevant work.

7.      The claimant was born on XXXXX, 1964 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2004, through the date of this decision.

AR at 18-31.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the hypothetical question upon which the ALJ relied for her step-five decision include the ALJ's finding that plaintiff could sit, stand, and walk for one hour at a time?

2.      Did the ALJ comply with Social Security Ruling 00-4p?

3.      Does substantial evidence support the ALJ's omission from her residual functional capacity assessment of a need for a cane?

4.      Did the ALJ properly evaluate non-examining State-agency physician Dr. Hurley's August 2009 determinations as evidence?

5.      Did the ALJ properly evaluate psychologist medical expert Dr. Toews' testimony about the adequacy of the record?

6.      Did the ALJ properly evaluate objective findings of mental illness?

7.      Did the ALJ properly evaluate treating physician Dr. Dreyer's February 2010 opinion that Lewis could not work full time?

Dkt. 15 at 1-2.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 7

VII.    DISCUSSION

A.    The ALJ Erred at Step Five, Requiring Remand for a Fourth Hearing

Plaintiff contends that substantial evidence does not support the ALJ's step five decision because the third hypothetical question upon which she relied did not reflect her own restriction to sitting, standing, and walking for one hour at a time.  Dkt. 15 at 5-6 (citing AR at 22, 30-31, 124-25).  Specifically, the ALJ's first hypothetical question to the vocational expert was expressly based upon Dr. Gerber's expert testimony, and asked what jobs can be performed by an individual who

> …can work an eight-hour day, of that eight-hour day, four of that would be standing and walking . . . *one hour at a time* for up to four hours in an eight-hour day, he would be able to sit six hours out of an eight-hour day . . . frequently [lift] 10 and occasionally [lift] 20 pounds…no work around heights or dangerous machineries, on ladders or scaffolds…do at least simple, repetitive tasks.  He would be able to do simple and some detailed tasks….Superficial interaction with the public…."

AR at 121-22 (emphasis added).  In response to that hypothetical question, the vocational expert testified that an individual with these limitations could not perform plaintiff's past relevant work, but could work as an office helper, mail clerk, and addresser.  AR at 123-24.

The ALJ's second hypothetical question, which the ALJ explained was based upon the prior ALJ's most recent decision and did not include any limitations from psychiatric impairments, provided as follows:

> Again, it will be 20 pounds, lift occasionally 10 pounds frequently, stand or walk *with normal breaks* for a total of six hours in an eight-hour day, sit *with normal breaks* for a total of six in an eight-hour day, push/pull unlimited, other than the limits for lifting and carrying, can climb ramps, stairs occasionally, but never ladders, ropes or scaffolding, can stoop frequently, but can only balance, kneel, crouch, crawl occasionally.  Must avoid hazardous machinery or heights and concentrated exposure to polar vibration…

AR at 125 (emphasis added).  The vocational expert identified the jobs of cashier and parking lot attendant, and commented that "I would say the other jobs that I had previously listed

REPORT AND RECOMMENDATION - 8

would all fit that." AR at 125.  The vocational expert further explained that the difference

between the second hypothetical and the first was the omission of any mental limitations,

which allowed more contact with the public and "there's an increased allowance for standing

and walking within that RFC.  That puts it more - - the light range.  It just opens up a lot more

jobs . . . I'm just giving you a few.  There would be many more."  AR at 125.

Finally, the ALJ's third hypothetical question asked simply whether "there [are] others

that would have the limited or superficial contact with the public?"  AR at 126.  The vocational

expert responded affirmatively, and identified the jobs of photocopy machine operator and

routing clerk.  AR at 126.  At step five, the ALJ identified these two jobs, photo copy machine

operator and routing clerk, as the representative jobs the plaintiff could perform despite his

impairments.  AR at 30-31.

On cross-examination, plaintiff's attorney asked the vocational expert if it was his

"testimony that an individual can perform several different light jobs within the first

hypothetical regardless of having restriction to standing for one hour at a time."  AR at 127.

The vocational expert responded, "The jobs that I list I felt were consistent with that.  I

wouldn't say all light jobs.  There are certain light jobs it that (sic) would not be consistent

with."  AR at 127.  The attorney asked, "And so the jobs that you have said, office helper, mail

clerk, for that first hypothetical—in order to reach that conclusion that that individual would

only have to stand for one hour and they could sit on those jobs to perform them . . . what do

you base your opinion on?"  AR at 127.  The vocational explained, "Based on the nature of the

job, it's –there are clerical type of jobs.  And oftentimes, clerical workers are able to sit

periodically throughout the day, as well as stand, so they're not required to stand and walk for

eight hours. . . ."  AR at 127.

REPORT AND RECOMMENDATION - 9

1    Plaintiff contends that the ALJ's third hypothetical question did not include her finding

2    that plaintiff could sit, stand, and walk for one hour at a time, but instead, incorporated the

3    physical demands of the second hypothetical question, which assumed that plaintiff could sit,

4    stand, or walk "with normal breaks." Dkt. 15 at 8 (citing AR at 124-25).  Plaintiff asserts that

5    "for both 'sedentary' and 'light' work, normal work breaks are at two-hour intervals." *Id.*

6    (citing SSR 96-9p).  Plaintiff asserts that under cross-examination, the vocational expert

7    "clarified that the two occupations identified in response to the ALJ's first hypothetical

8    question – office helper and mail clerk [AR at 123] – were the occupations consistent with a

9    restriction to holding a position for an hour at a time." *Id.* (citing AR at 127).  "Because the

10   hypothetical question upon which an ALJ relies must be accurate and complete . . . and

11   because the hypothetical upon which ALJ Filion relied did not reflect her one-hour restriction,

12   substantial evidence does not support [her] step-five decision." *Id.*

13   The Commissioner responds that "in order for the testimony of the VE to be considered

14   reliable, the hypothetical posed by the ALJ must include 'all of the claimant's functional

15   limitations, both physical and mental' supported by the record." Dkt. 21 at 10 (citing

16   *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) (providing that an ALJ need only

17   include credible limitations in a hypothetical)).  The Commissioner asserts that "the ALJ did

18   not, as plaintiff claims, rely on three mutually exclusive hypothetical questions.  To the

19   contrary, the record reveals the ALJ posed one hypothetical question with permutations of

20   varying limitations." *Id.* (citing AR at 121-24).  "In response to this [first] hypothetical

21   question, which was based on Dr. Gerber's testimony, and which the VE heard, the VE

22   identified the occupations of office helper, mail clerk, and addresser, which involved a limited

23   range of light work and sedentary work . . . the ability to stand, sit, or walk for one hour at a

24   time with normal breaks, for a total of 4 hours in an 8-hour workday." *Id.* (citing AR at 123).

The Commissioner explains that "[w]hen the hypothetical was slightly modified to include an increase in overall walking and/or standing from 4 hours to 6 hours in an 8-hour workday, the VE responded that 'the jobs that I previously listed would all fit,' before identifying the additional occupations of parking lot attendant or cashier." *Id.* (citing AR at 125).  The Commissioner asserts that "when the ALJ reiterated that any occupations identified by the VE would need to include superficial or limited interaction with the public, the VE identified additional occupations of photocopy machine operator and routing clerk." *Id.* (citing AR at 122, 126).

Contrary to the plaintiff's contention that the ALJ posted three discrete hypothetical questions, the Commissioner argues that "the limitation to 'limited or superficial' contact did not constitute a discrete 'third' hypothetical, because this limitation was already included at the outset of the one hypothetical." *Id.* (citing AR at 122) ("Superficial interaction with the public, and that's based on Dr. Toews' testimony.").  Thus, the Commissioner argues that "although not specifically included in the ALJ decision, the VE testified that the jobs of office helper, mail clerk, addresser, cashier, and parking lot attendant could be performed by a hypothetical individual with Plaintiff's RFC." *Id.* (citing AR at 121-25).  Finally, the Commissioner contends that "the VE hypothetical reflected Dr. Gerber's testimony that 'normal breaks' in standing and walking would be '[a]t least one hour at a time," AR at 68, as "the ALJ instructed the VE at the outset to credit Dr. Gerber's opinion." Dkt. 21 at 11.  As a result, "even if the 'one hour at time' testimony is construed as a limitation, such a limitation is not fatal to the reliability of the VE testimony in this case." *Id.* (citing *Coleman v. Shalala*, 1995 WL 139350, *3 (9th Cir. 1995)).

Plaintiff replies that the ALJ "asked three hypothetical questions and relied on the vocational expert's answer to the third hypothetical question for her step-five decision," as

1   evidenced from the fact that "the occupations [the ALJ] cited in her decision – photocopy

2   machine operator and routing clerk – were provided only in response to [the ALJ's] third

3   question." Dkt. 22 at 2-3 (citing AR at 31, 124-46).  Plaintiff further argues that the

4   Commissioner asks this Court to affirm "based on occupations [the ALJ] never cited: office

5   helper, mail clerk, addresser, cashier, and parking lot attendance . . . an improper post hoc

6   rationalization." *Id*. at 3.  Plaintiff asserts that harmless error analysis under *Molina v. Astrue*,

7   674 F.3d 1104 (9th Cir. 2012), does not authorize a court to affirm an ALJ's decision based on

8   post hoc rationalizations.  *Id.*  Plaintiff asserts that the ALJ's third hypothetical question did

9   not include her own finding that plaintiff could stand, walk, or sit for one hour at a time.  *Id*.

10          Plaintiff is correct.  The ALJ did not, as the Commissioner alleges, pose "one

11   hypothetical question" with varying "permutations" to the vocational expert. Dkt. 21 at 10.  As

12   discussed above, the first hypothetical question relied upon "Dr. Gerber's testimony" for

13   physical functional limitations and added mental limitations, which included the express

14   limitation that plaintiff could only stand, walk, or sit for one hour at a time.  AR at 121-22.

15   The second hypothetical question did not reflect Dr. Gerber's testimony for physical function

16   limitations, but expressly relied on ALJ Adams' earlier RFC assessment, which did not include

17   the one-hour restriction for sitting, standing, or walking.  AR at 124, 225.  Specifically, the

18   ALJ explained that she was "going to go to the just previous administrative law judge decision.

19   I'm going to read you the RFC that was contained in that decision, see if it's markedly

20   different in terms of how your testimony would be."  AR at 124.  The second hypothetical

21   included "normal breaks" for standing, walking, and sitting, rather than Dr. Gerber's one-hour

22   restriction.  AR at 124-25.  The VE asked "any psychiatric impairments there?"  AR at 125.

23   The ALJ responded, "Not in this RFC."  AR at 125.

24

REPORT AND RECOMMENDATION - 12

1    Finally, the ALJ's third hypothetical question added mental limitations to the second

2    hypothetical question.  AR at 126 ("Are there others that would have the limited or superficial

3    contact with the public?").  In response to this hypothetical, the VE responded that plaintiff

4    could perform the jobs of photocopy machine operator and routing clerk.  Thus, the ALJ's

5    third hypothetical question involved the addition of mental limitations to the second

6    hypothetical question, but did not include Dr. Gerber's one-hour limitation for standing, sitting,

7    or walking.[4]

8    As mentioned above, the ALJ's RFC assessment in this case found that plaintiff was

9    capable of performing light work with some additional limitations, including a limitation to

10   standing, walking, or sitting "for one hour at  a time with normal breaks, for a total of six hours

11   each in an eight-hour day."  AR at 22.  However, the ALJ's third hypothetical question to the

12   VE, upon which the ALJ relied on step five, included only a limitation to "normal breaks."  As

13   a result, the ALJ did not rely upon an accurate and complete hypothetical question at step five.

14   *See Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)

15   (providing that hypothetical questions asked of a vocational expert must be accurate and

16   complete and "set out all of the claimant's impairments").   It is therefore not clear whether the

17   ALJ's step-five decision, which cited only "representative occupations such as photo copy

18   machine operator (DOT 207.685-014) . . . and routine clerk (DOT 222.687-022)," is consistent

19   with this one-hour sitting, standing, and walking limitation.

20   Accordingly, the Court cannot determine whether substantial evidence supports the

21   ALJ's step five finding that plaintiff could perform other work.  This case must be

22

23   _____

   [4] The VE's testimony, on cross-examination, that the occupations of office helper and
24   mail clerk identified in response to the ALJ's first hypothetical question were consistent with
     the restriction to holding a position for one hour at a time is also consistent with this
     interpretation of the hearing testimony.  AR at 127-28.

REPORT AND RECOMMENDATION - 13

1   REMANDED for further administrative proceedings at step five to allow the ALJ to reevaluate

2   what jobs, if any, plaintiff can perform.

3        B.        The ALJ Did Not Comply with Social Security Ruling 00-4p

4        Plaintiff contends that the ALJ also failed to comply with SSR 00-4p, which provides

5   that "when a VE or VS provides evidences about the requirements of a job or occupation, the

6   adjudicator has an affirmative responsibility to ask about any possible conflict between that VE

7   or VS evidence and information provided in the DOT." Dkt. 15 at 9 (citing SSR 00-4p).  Here,

8   plaintiff asserts that the ALJ did not fulfill her affirmative responsibility to ask the vocational

9   expert whether his testimony was consistent with the DOT.  *Id*. (citing AR at 120-31).  *See*

10  *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that an ALJ may not rely

11  on a VE's testimony regarding the requirements of a particular job without first inquiring

12  whether the testimony conflicts with the DOT).

13       In addition, plaintiff argues that "any testimony about a 'sedentary' or 'light' DOT

14  occupation involving sitting, standing, or walking only an hour at a time would conflict with

15  the DOT, thus triggering the need for an ALJ to obtain the 'reasonable explanation' that SSR

16  00-4p requires and the 'persuasive evidence' that [*Johnson v. Shalala*] requires for the

17  conflict." Dkt. 15 at 10-11 (citing *Johnson*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("We make

18  explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only

19  insofar as the record contains persuasive evidence to support the deviation.").  This explanation

20  was required in this case because sedentary and light work both require an ability to sit for

21  "prolonged" periods, defined as two hours.  *See* SSR 83-12; SSR 96-9p.  *See also Coleman v.*

22  *Astrue*,  423 F. App'x 754, 755 (9th Cir. 2011) (holding that the ALJ failed to obtain a

23  "reasonable explanation" for the conflict between a VE's testimony and the DOT when the VE

24  purported to identify occupations requiring holding a sitting or standing position for one hour).

REPORT AND RECOMMENDATION - 14

The ALJ in this case denied that the VE's testimony conflicted with the DOT, AR at 31, and therefore did not obtain the "reasonable explanation" or "persuasive evidence" needed to justify reliance on any VE testimony about a "sedentary" or "light" DOT occupation involving holding the sitting, standing, or walking position for one hour at a time.  Dkt. 15 at 12.

The Commissioner contends that "although the ALJ did not affirmatively ask whether the VE's testimony was consistent with the DOT, she was not required to do so because Plaintiff's attorney elicited this information from the VE" when he asked whether it was the VE's testimony that an individual can perform several different light jobs within the first hypothetical regardless of having a restriction to standing for one hour at a time.  Dkt. 21 at 12. The VE responded that "I would say all light jobs.  There are certain light jobs it… would not be consistent with . . . Based on the nature of the job, it's –there are clerical type of jobs.  And oftentimes, clerical workers are able to sit periodically throughout the day, as well as stand, so they're not required to stand and walk for eight hours."  AR at 127-28.  Thus, the Commissioner asserts that "there is no apparent unresolved conflict between the DOT and the VE's expert testimony," and therefore "no need to specifically inquire of the VE if his testimony was consistent with the DOT."  Dkt. 21 at 12.

SSR 00–4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles ]."  SSR 00-4p (emphasis added).  SSR 00–4p further provides that the adjudicator "*will* ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.  SSR 00-4p.

1    Here, it is undisputed that the ALJ failed to comply with her "affirmative duty" to

2    inquire as to any possible conflict between the VE's testimony and the DOT.  This was error.

3    Furthermore, although the VE testified that the jobs of office helper, mail clerk, and addresser

4    were consistent with the restriction to one hour of sitting, standing, or walking because the

5    clerical nature of these jobs allow for a sit/stand option, the VE did not actually testify as to

6    whether such a restriction conflicted with the DOT.  As argued by the plaintiff, the VE's

7    testimony does appear to conflict with the DOT, as the Social Security Administration and the

8    DOT use the same definitions of "sedentary" and "light" work and both typically require an

9    ability to sit for two-hour periods.  *See* SSR 83-12 (providing that a person who must

10   alternative periods of sitting and standing "is not functionally capable of doing either the

11   prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged

12   standing or walking contemplated for most light work."); SSR 96-9p ("In order to perform a

13   full range of sedentary work, an individual must be able to remain in a seated position for

14   approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an

15   afternoon break at approximately 2-hour intervals.").

16   Most importantly, the VE did not specifically testify regarding whether the jobs upon

17   which the ALJ relied, photo copy machine operator and routing clerk, were consistent with

18   either a one-hour restriction or the DOT.  AR at 123-24, 127-28.  As mentioned above, "[a]n

19   ALJ may [not] rely on the testimony of a vocational expert regarding the requirements of a

20   particular job without first inquiring whether that expert's testimony conflicts with the [DOT]."

21   *Massachi*, 486 F.3d at 1150.

22   Finally, the ALJ erred by failing to acknowledge the apparent conflict between the

23   VE's testimony and the DOT, and explain how she resolved it in her written decision.  The

24   ALJ's written decision asserts that the VE's testimony was consistent with the DOT, and

1  includes no further discussion.  AR at 31.  *See also Pinto v. Massanari,* 249 F.3d 840, 847 (9th

2  Cir. 2001) ("[I]n order for an ALJ to rely on a job description in the [DOT] that fails to

3  comport with a claimant's noted limitations, the ALJ must definitively explain this

4  deviation.").  As mentioned above, this case is being remanded for further proceedings at step

5  five to allow the ALJ to reevaluate what jobs, if any, plaintiff can perform.  On remand, the

6  ALJ shall solicit the testimony of a VE.  If there is any conflict between the VE's testimony

7  and the DOT, the ALJ shall discuss the conflict and the ALJ's resolution of it in the written

8  decision.

9       C.      On Remand, the ALJ Should Expressly Discuss the Examining and Treating
                Physicians' Opinions that Plaintiff Needs a Cane to Ambulate

10              1.      *Standards for Reviewing Medical Evidence*

11     As a matter of law, more weight is given to a treating physician's opinion than to that

12  of a non-treating physician because a treating physician "is employed to cure and has a greater

13  opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

14  747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

15  physician's opinion, however, is not necessarily conclusive as to either a physical condition or

16  the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

17  *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

18  physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

19  contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

20  157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

21  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

22  making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

23  merely state his/her conclusions.  "He must set forth his own interpretations and explain why

24  they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

REPORT AND RECOMMENDATION - 17

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.     *Dr. Brendel*

Plaintiff contends that because he "has a nearly completely fused left ankle . . . substantial evidence does not support the [the ALJ's] omission from her residual functional capacity assessment of a need for a cane, i.e., her finding that [plaintiff] did not need a cane." Dkt. 15 at 12 (citing AR at 22).  Specifically, plaintiff argues that examining physician William Brendel, M.D. of MDSI Physician Services in Mt. Vernon, Washington, opined on December 30, 2010 that plaintiff needed a cane "for all types of terrain."  AR at 1207 ("The claimant uses

REPORT AND RECOMMENDATION - 18

1   a cane for balance, pain, and it is needed for all types of terrain and it is medically necessary.").

2   He explained that plaintiff's cane "was medically necessary based on objective examination

3   findings secondary to help with balance and off loading of the left foot.  It was not prescribed.

4   It is used for all ambulation."  AR at 1205.  On that same date, Dr. Brendel completed a

5   medical source statement of ability to do work-related activities, and opined that plaintiff

6   needed a cane for ambulation.  AR at 1198.  He indicated that although plaintiff could walk

7   100 feet without a cane and use a free hand to carry small objects, a cane was medically

8   necessary because "hip and ankle degeneration from pain" caused him to "need[] joint off

9   loading."  AR at 1198.

10          The Commissioner responds that "the need for a cane is not itself a functional

11  limitation . . . but a device that assists with varying degrees of functional limitation."  Dkt. 21

12  at 13.  The Commissioner asserts that "[h]ere, the ALJ properly noted that Plaintiff's use and

13  need for a cane would not change the RFC assessment because Dr. Gerber testified that the

14  need for a cane would not alter his opinion about plaintiff's functional capacity."  *Id*. (citing

15  AR at 23, 27).  With respect to plaintiff's claims that the ALJ failed to provide legally

16  sufficient reasons for implicitly rejecting Dr. Brendel's opinion that plaintiff needed to use a

17  cane, the Commissioner asserts that "Dr. Brendel's opinion that Plaintiff needed a cane was not

18  relevant to his RFC assessment; thus, the ALJ was not required to specifically [reject] this

19  portion of Dr. Brendel's opinion."  *Id*. at 14.

20          The ALJ gave Dr. Brendel's opinions "some weight."  AR at 27.  Specifically, the ALJ

21  noted that "his conclusions are based on direct examination of the claimant, including range of

22  motion testing and assessment of the claimant's muscle functioning.  His findings are

23  consistent with the treatment evidence of record."  AR at 47.  However, the ALJ failed to

24  discuss Dr. Brendel's opinion that use of a cane was "medically necessary" due to plaintiff's

REPORT AND RECOMMENDATION - 19

1    ankle condition, or provide specific and legitimate reasons to reject this aspect of Dr. Brendel's

2    opinion.

3           In a separate portion of the ALJ's written decision, the ALJ asserted that plaintiff's

4    "ankle problems did not prevent him from working" and noted Dr. Burdick's [2006]

5    observation that "the claimant did not use an assistive device, and claimed to have no problems

6    bending, stooping, or crouching." AR at 25.  The ALJ further noted that "the claimant

7    displayed better left ankle range of motion during his exam with Dr. Brendel, and full motor

8    strength.  Also of note, the claimant sustained this injury in 1995, and was able to continue

9    working for nearly ten years after that time.  While degeneration certainly is not unexpected

10   years post injury, as is the case here, the level of alleged functional limits are not supported by

11   the record." AR at 25.  Finally, the ALJ found that "there is no indication in the record that the

12   claimant was ever prescribed a cane." AR at 25.

13          Although it is undisputed that plaintiff has never been prescribed a cane, examining

14   physician Dr. Brendel clearly opined that use of a cane "for all ambulation" was "medically

15   necessary based on objective examination findings secondary to help with balance and off

16   loading of the left foot." AR at 1205.  The ALJ failed to provide specific and legitimate

17   reasons to reject this aspect of Dr. Brendel's opinion.  Because this case is being remanded, the

18   ALJ shall also discuss this aspect of Dr. Brendel's opinion.  If the ALJ does not find use of a

19   cane to be medically necessary, regardless of whether it was "prescribed" for plaintiff, the ALJ

20   shall provide legally sufficient reasons for rejecting this aspect of Dr. Brendel's opinion.

21                       3.      *Dr. Dreyer*

22          Similarly, plaintiff argues that the ALJ failed to evaluate treating physician Sheryl Ann

23   Dreyer, M.D.'s February 2010 opinion that plaintiff needed a cane.  Dkt. 15 at 15 (citing AR at

24   28, 1191).  Specifically, Dr. Dreyer submitted a declaration stating that "he has been using a

1    cane since I started treating him, but I believe a cane would be medically necessary and that he

2    would need it to assist him with both standing and walking more than 20 to 30 minutes at a

3    time." AR at 1191. The Commissioner argues that because the ALJ provided "specific and

4    legitimate reasons for rejecting Dr. Dreyer's assessed severe limitations, she was not required

5    to further discuss Dr. Dreyer's opinion about the need for a cane." Dkt. 21 at 16 (citing *Orn v.*

6    *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).

7              The ALJ opined that Dr. Dreyer's "opinions are given little weight because they are not

8    consistent with the objective evidence in the record. Furthermore, these findings are consistent

9    with her own treatment notes, which indicate that the claimant's physical limitations are

10   moderate, at worst." AR at 28. Finally, the ALJ noted that "Dr. Dreyer's specialty is HIV

11   treatment, which makes her assessment of the claimant's ankle problems less convincing." AR

12   at 28.

13             On remand, the ALJ is directed to re-evaluate Dr. Dreyer's opinion. As a threshold

14   matter, the ALJ does not explain how Dr. Dreyer's findings are inconsistent with her treatment

15   notes, which the ALJ asserts reflect only "moderate" limitations. Although the ALJ states that

16   Dr. Dreyer's opinions are not consistent with the objective evidence in the record, there is also

17   objective evidence of record that arguably supports the need for use of a cane, which the ALJ

18   does not address. For example, Dr. Brendel's objective findings included plaintiff's "difficulty

19   with tandem gait, refusing after two steps due to difficulty bearing weight through the left

20   ankle. He is unable to walk on his toes or heels when using his left foot . . . He is unable to

21   perform a squat secondary to pain in his left ankle." AR at 1205. It is also not clear that Dr.

22   Dreyer is unqualified to render an opinion regarding plaintiff's osteoarthritis in his ankle. *See*

23   20 C.F.R. §§ 404.1527(c)(5), 416.927(c) (providing that more weight may be afforded to

24   opinions of specialists about medical issues related to area of specialty). Although Dr.

REPORT AND RECOMMENDATION - 21

Dreyer's sub-specialty is HIV, she is board-certified in internal medicine.  AR at 1190.  On

remand, the ALJ is directed to re-evaluate Dr. Dreyer's opinion, and specifically discuss her

opinion that a cane is "medically necessary . . . [for] standing and walking more than 20 to 30

minutes at a time."  AR at 1191.[5]

> D.    The ALJ Shall Re-Evaluate Dr. Hurley's August 2009 Opinions

Plaintiff contends that the ALJ erred by giving "great weight" to the August 2009

determinations of non-examining state agency physician Dr. Hurley as opinion evidence.  Dkt.

15 at 19 (citing AR at 27).  Specifically, plaintiff asserts that he reapplied for both DIB and SSI

in July 2009, while his request for review by the Appeals Council of the first ALJ decision was

pending.  In August 2009, Dr. Hurley determined plaintiff's RFC at the initial level of

adjudication of plaintiff's July 2009 applications.  AR at 1122-29.  In determining plaintiff's

RFC, Dr. Hurley expressly "considered" *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)

(adopted as Acquiescence Ruling (AR) 97-4(9)).  *Chavez* held that "the principles of res

judicata apply to administrative decisions," and "in order to overcome the presumption of

continuing nondisability arising from the first [ALJ's] findings of nondisability," the claimant

must prove "changed circumstances" indicating a greater disability.  *Chavez*, 844 F.2d at 693.

Similarly, AR 97-4(9) provides in part that "[w]hen adjudicating a subsequent claim

involving an unadjudicated period, adjudicators will apply a presumption of continuing

nondisability and determine that the claimant is not disabled with respect to that period, unless

the claimant rebuts the presumption . . . by showing a 'changed circumstances' affecting the

issue of disability with respect to the unadjudicated period…."  However, plaintiff contends

---

[5] Plaintiff's related argument that the ALJ erred by failing to discuss Dr. Gerber's testimony that he could "not tell" from the record whether a cane was medically necessary is unpersuasive.  Dkt. 15 at 16-17 (citing AR at 74-75).  Dr. Gerber testified that medical necessity of a cane would not change his testimony regarding plaintiff's functional ability to stand, walk, and sit.  AR at 74-75.

REPORT AND RECOMMENDATION - 22

1   that *Chavez* and AR 97-4(9) only apply when the prior ALJ decision is final.  *See Chavez*, 844

2   F.2d at 693; AR 97-4(9) ("If the claimant rebuts the presumption, adjudicators then must give

3   effect to certain findings . . . contained in the final decision by an ALJ or the Appeals Council

4   on the prior claim."); Program Operations Manual System ("POMS"), § DI 52755.001(C)(1).

5   Plaintiff points out that first ALJ's June 2009 decision was not final, but rather was pending at

6   the Appeals Council when Dr. Hurley made his determinations in August 2009.  In fact, the

7   ALJ's decision was vacated in September 2009.  AR at 231-35.  As a result, plaintiff contends

8   that the ALJ in this case "had no authority to rely on Dr. Hurley's determinations as opinion

9   evidence because Dr. Hurley erroneously applied *Chavez* – considered ALJ's Adams' residual

10  functional capacity assessment binding absent changed circumstances – when making his

11  August 2009 determinations."   Dkt. 15 at 20. Plaintiff asks the Court to order the ALJ, on

12  remand, to "give no weight to Dr. Hurley's determinations."  *Id.*

13      The Commissioner responds that "[a]ccording to Plaintiff, Dr. Hurley was not

14  permitted to consider *Chavez* in the absence of a final agency decision."  Dkt. 21 at 16.

15  "*Chavez* was inapposite, however, because Plaintiff's subsequent claims of disability filed in

16  July 2009, did not involve an unadjudicated period."  *Id.* (citing AR 97-4(9)).  Rather, the

17  subsequent applications alleged an onset date of January 26, 2006, while Plaintiff's initial

18  applications involved an alleged onset date of December 1, 2004.  In other words, the June 4,

19  2009 issued by ALJ Adams adjudicated the period at issue in the subsequent application."  *Id*.

20  (citing AR at 229).  The Commissioner argues that "in any event, Plaintiff's claim of a

21  procedural defect does not undermine the substance of Dr. Hurley's opinion, which the ALJ

22  reasonably concluded had sufficient probative value to warrant 'great weight' because it was

23  supported by the treatment records and was consistent with other evaluations in the record."

24  *Id*. (citing AR at 27).

REPORT AND RECOMMENDATION - 23

1   Plaintiff replies that "*Chavez* applies only to a final and binding ALJ (or Appeals

2   Council) decision, and ALJ Adams' June 2009 decision was neither final nor binding.  The

3   Commissioner did not contest that analysis." Dkt. 22 at 10.  Plaintiff asserts that the period

4   that Judge Adams adjudicated "has nothing to do with whether his decision was final and

5   binding."  *Id*. at 11.  Thus, Dr. Hurley's determination, which was based on ALJ Adams'

6   decision under *Chavez*, was entitled to no weight.  *Id*.

7   As a threshold matter, the Court declines plaintiff's invitation to direct the ALJ to

8   afford "no weight" to Dr. Hurley's August 2009 opinion.  It is the role of the trier of fact, and

9   not this Court, to weigh the medical evidence.  Moreover, this Court may not substitute its

10   judgment for that of the ALJ.  However, the Court agrees with plaintiff that if the ALJ wishes

11   to afford "great weight" to Dr. Hurley's opinions, the ALJ should explain why Dr. Hurley's

12   consideration of *Chavez*, in this context, did not undermine the remainder of his findings.  Dr.

13   Hurley's physical residual functional capacity assessment included check-box limitations as

14   well as narrative comments, but concluded with the statement that "Chavez was considered."

15   AR at 1129.  On remand, the ALJ is directed to reevaluate Dr. Hurley's opinion, and

16   specifically address Dr. Hurley's apparent reliance on the *Chavez* decision.

17   E.   The ALJ Shall Further Develop the Record Regarding Plaintiff's
        Mental Impairments

18   The ALJ asserted that she afforded "great weight to the opinions of the medical expert,

19   Dr. Toews.  While Dr. Toews was unable to make a definitive mental diagnosis, he concluded

20   that the claimant's mental condition does not prevent him from working.  Dr. Toews' finding

21   that the claimant can perform simple tasks and has moderate limitations in his ability to

22   interact with others is consistent with the evidence of record."  AR at 27.

23

24

REPORT AND RECOMMENDATION - 24

1    Plaintiff contends that the ALJ erred by failing to order further objective testing

2    regarding plaintiff's mental impairments because the ALJ "failed to evaluate Dr. Toews'

3    important testimony that further record development was warranted."  Dkt. 15 at 20 (citing AR

4    at 25-27, 77-88).  Specifically, Dr. Toews recommended that the ALJ obtain a Minnesota

5    Multiphasic Personality Inventory ("MMPI") or a "personality assessment inventory" and a

6    "response validity inventory, such as SIMS."  AR at 80, 88.  Dr. Toews further testified that it

7    would be "very helpful" if plaintiff underwent formal memory testing, such as the Wechsler

8    Memory Scale, either third or fourth edition.  AR at 80.  According to Dr. Toews, additional

9    objective evidence would be "extremely helpful" and could change his opinion regarding

10   plaintiff's level of functioning.  AR at 87.  Plaintiff contends that "it was arbitrary for ALJ

11   Filion to rely expressly on Dr. Toews' testimony to justify not obtaining the report of a

12   consultative psychological examination with psychometric testing when Dr. Toews strongly

13   recommended such testing."  Dkt. 15 at 21.

14   The Commissioner responds that Dr. Toews further testified that psychological testing

15   would not be helpful in determining plaintiff's mental functioning "back to 2004," the period

16   at issue in this case.  Dkt. 21 at 18 (citing AR at 80).  In any event, Dr. Toews asserted that

17   plaintiff's "actual activity level and ability to conduct affairs" would override any psychiatric

18   test findings.  *Id.* (citing AR at 81).  The Commissioner argues that "because there was an

19   abundance of evidence in the record of Plaintiff's activities . . . the ALJ was not required to

20   order psychological testing to determine Plaintiff's exact diagnosis at the time of the hearing."

21   *Id.*

22   The Commissioner misconstrues Dr. Toews' testimony.  Although Dr. Toews

23   agreed with the ALJ's comment that a current consultative examination would not "tell [the

24   ALJ] what was going on back in 2004," he further testified that "the depression scale of the

REPORT AND RECOMMENDATION - 25

MMPI and multiple scales do have some long-term validity . . . somebody who's very familiar with the MMPI would probably be able to make a very good estimate of how – of the duration of the depression."  AR at 80.  On cross-examination, he further testified that additional objective testing at this time "would be extremely helpful" and could change his opinion regarding plaintiff's functioning.  AR at 87.

Because this case is already being remanded, it is unnecessary to decide whether the ALJ erred by failing to obtain additional objective evidence before issuing her written decision. On remand, the ALJ is directed to obtain additional consultative examinations with the psychometric testing specified by Dr. Toews.  The Court is bothered by the fact that this will be the fourth administrative hearing conducted in this case, and the ALJ is directed to take her time and obtain whatever objective evidence is necessary so that a fifth hearing is not required. To this end, the ALJ is further directed to consult physician and psychological medical experts to assist in evaluating the objective medical evidence at the next hearing.

In light of the fact that additional objective testing will be obtained on remand, it is unnecessary to address plaintiff's additional assignments of error regarding the ALJ's evaluation of plaintiff's mental impairments.  On remand, the ALJ shall re-evaluate the medical opinion evidence relating to plaintiff's mental impairments.

//

//

//

//

//

//

//

REPORT AND RECOMMENDATION - 26

1

### VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3    REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4    instructions.   A proposed order accompanies this Report and Recommendation.

5          DATED this 26th day of September, 2013.

6

7                                          *James P. Donohue*
                                           _____
8                                          JAMES P. DONOHUE
                                           United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 27